2006-NMCA-109

142 P.3d 365

**Terri CRUZ, Plaintiff–Appellant,**

v.

**FTS CONSTRUCTION, INC., Fred P. Sanchez, Individually, Fred P. Sanchez d/b/a FTS Construction, and Nathan Sanchez, Individually, Defendants–Appellees.**

**No. 25,708.**

Court of Appeals of New Mexico.

June 29, 2006.

Certiorari Granted, No. 29,938, Aug. 23, 2006.

The Law Firm of Alexander D. Crecca, P.C., Alexander D. Crecca, Albuquerque, NM, for Appellant.

Ray A. Padilla, P.C., Ray A. Padilla, Brett J. Olsen, P.C., Brett J. Olsen, Albuquerque, NM, for Appellees.

## OPINION

PICKARD, Judge.

{1} This case involves two lawsuits—one that is presently pending before the district court on de novo appeal from the magistrate court and one (the action on appeal here) that was originally filed in the district court. We examine a doctrine most recently articulated in *Valdez v. Ballenger,* 91 N.M. 785, 786, 581 P.2d 1280, 1281 (1978), which we term "priority jurisdiction." The purpose of the doctrine is to prevent the same lawsuit from being litigated twice. We hold that under the circumstances of this case, the district court did not err in dismissing Plaintiff's complaint under the doctrine of priority jurisdiction. Rejecting several additional arguments made by Plaintiff, we affirm the district court's dismissal, and we clarify that Plaintiff's complaint should have been dismissed without prejudice to her right to recover in the other proceeding pending in district court.

**FACTS AND PROCEDURAL BACKGROUND**

{2} Plaintiff entered into a contract to purchase a newly constructed house from Defendants. In 2001, Plaintiff filed a pro se complaint in magistrate court, alleging that Defendants had failed to "repair major cracks" in the house and had failed to finish a block wall on the premises. Plaintiff prevailed in magistrate court and was awarded a judgment of $7,500 plus costs, which was the largest amount the magistrate court had jurisdiction to award at that time. *See* NMSA 1978, § 35–3–3(A) (amended effective July 1, 2001, to raise jurisdictional limit from $7,500 to $10,000). Defendants then filed a notice of appeal, invoking their right to a de novo trial in the district court. *See* N.M. Const. art. VI, § 27 (providing for de novo appeal to the district court from inferior courts). That appeal is still pending in the district court.

{3} Nine months after Defendants appealed to the district court, Plaintiff filed a separate action—the case on appeal here—in district court. The new case was assigned to a different division of the Valencia County District Court. The new complaint also related to Defendants' construction of Plaintiff's house and alleged negligence, negligent misrepresentation, fraud, unfair trade practices, breach of the duty of good faith, prima facie tort, and emotional distress. Plaintiff's position is that the house has developed new problems, which she was unaware of at the time she filed the complaint in magistrate court, and that these problems will be far

more costly to repair than she could have anticipated at that time. Defendants strongly disagree with this assertion.

{4} After more than two years of litigation, Defendants filed a "Motion to Dismiss and for Summary Judgment." In that motion, Defendants argued that the complaint should be dismissed under a doctrine that they termed "prior exclusive jurisdiction." Alternatively, Defendants argued on the merits that Plaintiff's claims failed as a matter of law. The district court denied the "summary judgment portion" of Defendants' motion as untimely. The court determined that Defendants' argument regarding "prior exclusive jurisdiction" raised jurisdictional issues that should be addressed despite the untimeliness of the motion.

{5} After briefing and argument, the district court dismissed the complaint and entered the following four conclusions of law:

1. A judgment entered by the Magistrate Court is final even if appealed.

2. The fact that the District Court is rendering an independent decision on an appeal from a judgment entered by the Magistrate Court does not mean that the matter is not an appeal, as the District Court is still bound by the jurisdiction of the magistrate court.

3. It is in the same manner that the Court of Appeals reviews matters of law de novo from the District Court, that the District Court reviews matters de novo from the Magistrate Court.

4. The Defendants['] position that this cause of action must be abated and dismissed in favor of Defendants' appeal from the judgment entered by the . . . Magistrate Court . . . is well taken.

{6} On appeal, Plaintiff makes four arguments: (1) the district court misapplied the doctrine of "prior exclusive jurisdiction" because its elements were not satisfied in this case; (2) the district court erred in dismissing the complaint because *Sanchez v. Reilly*, 54 N.M. 264, 267, 221 P.2d 560, 562 (1950), specifically permits Plaintiff to file a new complaint in district court despite the prior magistrate court proceedings; (3) the dismissal infringed on Plaintiff's constitutionally

protected right of access to the courts; and (4) the de novo appeal to the district court "annulled" the magistrate court judgment.

## DISCUSSION

### 1. The District Court Did Not Err in Dismissing the Complaint Under the Doctrine of Priority Jurisdiction

■ {7} Plaintiff argues that the district court erred in dismissing the complaint because the elements of the doctrine that the court applied were not satisfied. Because the case was disposed of on a motion to dismiss, we will accept all of Plaintiff's facts as true, and we will review de novo the question of whether the district court properly applied the law to those facts. *See R & R Deli, Inc. v. Santa Ana Star Casino*, 2006–NMCA–020, ¶ 2, 139 N.M. 85, 128 P.3d 513. We hold that the district court did not err in dismissing the complaint.

{8} In their motion to dismiss, Defendants asserted that Plaintiff's complaint should be dismissed under the doctrine of "prior exclusive jurisdiction." Defendants cited *Valdez*, 91 N.M. at 786, 581 P.2d at 1281, which reads as follows:

Generally, a second suit based on the same cause of action as a suit already on file will be abated where the first suit is entered in a court of competent jurisdiction in the same state between the same parties and involving the same subject matter or cause of action, if the rights of the parties can be adjudged in the first action.

*Id.* (internal quotation marks and citation omitted).

{9} For the sake of clarity, we begin by noting that *Valdez* does not use the term "prior exclusive jurisdiction." In fact, we have found no published New Mexico case that uses that term. "Prior exclusive jurisdiction" appears to be a doctrine that would not be applicable in this case because it applies only to in rem actions. *See Black's Law Dictionary* 1231 (8th ed.2004) (defining the doctrine as "[t]he rule that a court will not assume in rem jurisdiction over property that is already under the jurisdiction of another court of concurrent jurisdiction"); *see also State Eng'r of Nev. v. S. Fork Band of*

the *Te–Moak Tribe of W. Shoshone Indians of Nev.*, 339 F.3d 804, 809 (9th Cir.2003) (stating that prior exclusive jurisdiction means that "when a court of competent jurisdiction has obtained possession, custody, or control of particular property, that possession may not be disturbed by any other court." (internal quotation marks and citation omitted)).

{10} Rather, the rule stated in *Valdez* refers to the doctrine of "priority jurisdiction." *See, e.g., Long v. McKinney*, 897 So.2d 160, 172 (Miss.2004) ("[T]he principle of priority jurisdiction is that where two suits between the same parties over the same controversy are brought in courts of concurrent jurisdiction, the court which first acquires jurisdiction retains jurisdiction over the whole controversy to the exclusion or abatement of the second suit[.]" (internal quotation marks and citation omitted)). The doctrine exists in various forms in other jurisdictions, although it sometimes has different names. *See, e.g., Plant Insulation Co. v. Fibreboard Corp.*, 224 Cal.App.3d 781, 274 Cal.Rptr. 147, 150–52 (Ct.App.1990) (referring to similar doctrine as "exclusive concurrent jurisdiction" and noting that that doctrine is also similar to statutory plea in abatement, which may be maintained under circumstances where, if first action were carried to final judgment, res judicata would be a complete bar to second action); *Twp. Oil Co. v. State Bank of Fraser*, 162 Mich.App. 737, 413 N.W.2d 94, 95 (1987) (noting a court rule that codifies the doctrine and referring to the doctrine as a "plea of abatement by prior action").

{11} This doctrine is not well developed in New Mexico, and we have found only three New Mexico cases that discuss it in any more than passing fashion. *See Valdez*, 91 N.M. at 786–87, 581 P.2d at 1281–82 (stating and applying the doctrine); *Burroughs v. U.S. Fid. & Guar. Co.*, 74 N.M. 618, 621, 397 P.2d 10, 12 (1964) (stating the doctrine but finding no basis for reversal because the doctrine was not jurisdictional and had not been raised below), *overruled on other grounds by Quintana v. Knowles*, 113 N.M. 382, 387, 827 P.2d 97, 102 (1992); *State ex rel. Kermac Nuclear Fuels Corp. v. Larrazolo*, 70 N.M.

475, 482–83, 375 P.2d 118, 123–24 (1962) (stating the doctrine but holding that, although trial court perhaps should have abated the suit, its failure to do so was not grounds for a writ of prohibition).

{12} *Valdez*, which is the only New Mexico case to actually apply the doctrine, arose out of a car accident where numerous people were injured. 91 N.M. at 786, 581 P.2d at 1281. Ballenger sued Valdez and Hall in Bernalillo County. *Id.* Then, Valdez sued Ballenger in Torrance County, and Hall joined this second action as a plaintiff. *Id.* Our Supreme Court held that the Torrance County action should be abated and that Valdez and Hall should assert their claims as counterclaims in the Bernalillo County action. *Id.* at 786–87, 581 P.2d at 1281–82. The Court clarified that the appropriate procedure was to dismiss the Torrance County action without prejudice to the rights of the parties to proceed in the Bernalillo County action. *Id.* at 787, 581 P.2d at 1282.

{13} The elements of priority jurisdiction as articulated in *Valdez* can be broken down as follows: (1) the two suits must involve the same subject matter or the same cause of action, (2) the two suits must involve the same parties, (3) the first suit must have been filed in a court of competent jurisdiction in the same state, and (4) the rights of the parties must be capable of adjudication in the first-filed action. *Id.* at 786, 581 P.2d at 1281. We hold that all of these elements are satisfied in this case.

{14} With regard to the first element, Plaintiff argues that the subject matter of the present case is different from the subject matter of the first case because new claims and new "theories of law" were added in the present action. We disagree with this argument, and instead we agree with courts from other jurisdictions that have chosen to ask whether the two suits arise out of the same transaction. *See, e.g., Plant Insulation Co.*, 274 Cal.Rptr. at 152 (holding that the doctrine is applicable where "the first and second actions arise from the same transaction" (internal quotation marks and citations omitted)). We believe this is the appropriate standard because our test for res judicata, which also requires that the two cases in-

volve the "same cause of action," uses a transactional analysis. *See Cagan v. Vill. of Angel Fire*, 2005–NMCA–059, ¶ 19, 137 N.M. 570, 113 P.3d 393.

{15} It makes sense to use the same standard for priority jurisdiction that we use for res judicata because the policy rationales behind the two doctrines are so similar. The policy rationales behind the doctrine of priority jurisdiction are to "avoid[ ] conflicts that might arise between courts if they were free to make contradictory decisions or awards relating to the same controversy, and [to] prevent[ ] vexatious litigation and multiplicity of suits." *Plant Insulation Co.*, 274 Cal.Rptr. at 150; *see also* 1 Am.Jur.2d *Abatement* § 6 (2005) ("The purpose of the defense of abatement by reason of another action pending is to protect a party from harassment by having to defend several suits on the same cause of action at the same time."). The policy rationales behind the doctrine of res judicata are similar: "The underlying principle behind res judicata is to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and[,] by preventing inconsistent decisions, encourage reliance on adjudication." *Cordova v. Larsen*, 2004–NMCA–087, ¶ 23, 136 N.M. 87, 94 P.3d 830 (internal quotation marks and citation omitted). Thus, priority jurisdiction serves the same purpose as res judicata, but operates where there is not a final judgment and instead there is a pending case.

{16} We now evaluate the two cases pursuant to the transactional analysis. First, we do not agree with Plaintiff that mere changes in legal theory sufficiently distinguish this case from the previous case. *See Apodaca v. AAA Gas Co.*, 2003–NMCA–085, ¶ 78, 134 N.M. 77, 73 P.3d 215 (reiterating the transactional test for res judicata and noting that "a mere change in a legal theory does not create a new cause of action" (internal quotation marks and citation omitted)); *Twp. Oil Co.*, 413 N.W.2d at 95 (holding that abatement was properly applied to dismiss case even though the plaintiff had claimed more damages in the second action).

{17} Second, in the recent case of *Brooks Trucking Co. v. Bull Rogers, Inc.*, 2006–NMCA–025, ¶¶ 16–18, 139 N.M. 99, 128 P.3d 1076 (*Brooks* ), we held that res judicata did not bar a subsequent lawsuit where the operative facts underlying the second lawsuit were not in existence when the first suit was brought. Plaintiff appears to make a similar argument in this case when she alleges that the magistrate court complaint was for breach of warranty in connection with Defendants' failure to build a wall and failure to repair minor, cosmetic cracks in the walls of the house, whereas the district court complaint involved wider cracks that were indicative of structural damage. Even assuming that these differences could support the idea that there were two different transactions, which we doubt, the documents Plaintiff submitted below indicate that she knew of structural damage prior to the filing of the magistrate court complaint and knew that the jurisdictional limit of the magistrate court would preclude recovering damages sufficient to repair all the problems. More importantly, however, the operative facts for both cases are the same, and thus this is not a case like *Brooks*. Here, Plaintiff's allegations in both lawsuits relate to the same transaction—Defendants' alleged faulty building of the house, which purportedly caused the foundation to subside and caused cracks and other structural damage. Thus, we hold that the first element of priority jurisdiction is satisfied.

{18} With regard to the second element, that the two cases involve the same parties, Plaintiff argues that the parties in this case are different because three defendants have been added. Plaintiff's original suit named only FTS Construction. In this case, Plaintiff added FTS Construction, Inc., Fred Sanchez, and Nathan Sanchez. In response to Plaintiff's argument that this case involves different parties, Defendants argue that all of the new defendants are in privity with the original defendant. Plaintiff does not dispute this statement in her reply brief and does not provide any additional argument with regard to the question of whether the two actions involve the same parties. *See Delta Automatic Sys., Inc., v. Bingham*, 1999–NMCA–029, ¶ 31, 126 N.M. 717, 974 P.2d 1174 (holding that the appellant's failure to respond to

an argument in the answer brief "constitute[d] a concession on the matter"). We also note that Plaintiff's amended complaint in this action alleges that (1) Fred Sanchez is the president and qualifying contractor for FTS Construction, (2) both corporate defendants are liable for the actions of Fred and Nathan Sanchez under a theory of agency or respondeat superior, and (3) FTS Construction, Inc. is liable for the actions of FTS Construction and the other two defendants on a theory of successor liability. Under these circumstances, and in the absence of any response to the contrary from Plaintiff, we agree that the new defendants are in privity with FTS Construction. Thus, we hold that both actions involve the same parties for purposes of priority jurisdiction. *See Lytwyn v. Fry's Elecs., Inc.,* 25 Cal.Rptr.3d 791, 805 n. 10 (Ct.App.2005) (relying on privity principles from preclusion cases in case involving priority jurisdiction), *review granted and opinion superseded by* 28 Cal.Rptr.3d 3, 110 P.3d 1218 (2005). (Although *Lytwyn* is technically not citable under California's rules, it has been found persuasive on another issue in a case that notes the opinion was withdrawn in order to rule on the retroactivity of "Proposition 64," which was the other issue addressed in the *Lytwyn* case. *See Chamberlan v. Ford Motor Co.,* 369 F.Supp.2d 1138, 1150 & n. 6 (N.D.Cal.2005).)

{19} With regard to the third element of priority jurisdiction, that the first suit was filed in a court of "competent jurisdiction," Plaintiff argues that the present action should not be dismissed in favor of the first case (which is presently on de novo appeal in the district court), because the magistrate court was not a "court of competent jurisdiction" and thus the district court sitting on appeal is also not "competent." Plaintiff argues that both courts are "without subject matter jurisdiction over [P]laintiff's new damages and new claims." We agree with Plaintiff that a district court hearing an appeal from the magistrate court is bound by the lower court's jurisdictional limits and that, if the magistrate court lacked jurisdiction, the district court would also lack jurisdiction. *See State v. Haar,* 100 N.M. 609, 611, 673 P.2d 1342, 1344 (Ct.App.1983). However, we disagree with Plaintiff that either court lacks jurisdiction under the circumstances of this case.

{20} At the time that Plaintiff commenced her action in magistrate court, that court had jurisdiction "in civil actions in which the debt or sum claimed does not exceed seven thousand five hundred dollars ($7,500), exclusive of interest and costs." *See* § 35–3–3 (amended effective July 1, 2001 to raise jurisdictional limit from $7,500 to $10,000). Plaintiff's argument appears to be that, because she now believes her damages to exceed $7,500, the magistrate court and the district court sitting on appeal lack subject matter jurisdiction over her first action. We disagree.

{21} We find this issue to be similar to the issue of federal diversity jurisdiction under 28 U.S.C. § 1332 (2000). This statute permits diversity jurisdiction where the statute's "amount in controversy" and citizenship requirements are satisfied. It is well established that these requirements are measured at the time the suit is filed:

> Satisfaction of the [28 U.S.C.] § 1332(a) diversity requirements (amount in controversy and citizenship) is determined as of the date that suit is filed—the "time-of-filing" rule. Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction.... Federal diversity jurisdiction is not lost by post-filing events that change or disturb the state of affairs on which diversity was properly laid at the outset.

*Wolde–Meskel v. Vocational Instruction Project,* 166 F.3d 59, 62 (2d Cir.1999) (internal quotation marks and citations omitted).

{22} We think that, as with diversity jurisdiction, the magistrate court's jurisdiction must be measured at the time of filing. The primary reason for our holding is the concern that it would prove unworkable to adopt a rule that could cause jurisdiction to come and go during the course of a lawsuit, based on the dollar amount that the plaintiff happened to be claiming at the time. *Cf.* 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3608, at 452 (1984) (noting that the diversity jurisdiction time-of-filing rule is a "policy

decision" that provides stability and minimizes abuses of jurisdictional rules and repeated challenges to subject matter jurisdiction).

{23} While we are aware of the general rule that parties cannot create or confer subject matter jurisdiction by consent, *see, e.g., Chavez v. County of Valencia,* 86 N.M. 205, 209, 521 P.2d 1154, 1158 (1974), we are also of the view that, by bringing suit in the magistrate court, Plaintiff acknowledged that she was willing to dispose of her claims for $7,500 or less. Under Section 35–3–3(A), the magistrate court's jurisdiction is dependant upon the dollar amount of the "debt or sum claimed." Obviously, the plaintiff is the only party who is in a position to decide whether or not to "claim" a sum of more than $7,500. Accordingly, Plaintiff cannot now avoid the effects of the previous litigation (which was brought in the forum of Plaintiff's choice and resulted in a judgment in her favor) by claiming that the magistrate court has been ousted of subject matter jurisdiction due to her current claim that her damages exceed that court's jurisdictional limit. Because any other rule would prove unworkable, we hold that the magistrate court's jurisdiction under Section 35–3–3 must be measured at the time suit is filed.

{24} We understand Plaintiff's argument that due to later-discovered damages, she cannot obtain complete recovery if she is left with only the de novo appeal, in which the district court will be bound by the magistrate court's jurisdictional limit. We are not persuaded by this argument. We are again informed by the analogous doctrine of res judicata. A plaintiff cannot avoid the application of res judicata where he or she brought a prior suit on the same cause of action in a court with a jurisdictional limit. *See Anaya v. City of Albuquerque,* 1996–NMCA–092, ¶ 7, 122 N.M. 326, 924 P.2d 735 (indicating that New Mexico follows the Restatement (Second) of Judgments § 24 (1982) for res judicata purposes); Restatement (Second) of Judgments § 24, cmt. g ("The plaintiff, having voluntarily brought his action in a court which can grant him only limited relief, cannot insist upon maintaining another action on the claim."); *see also Vin-*

*cent v. Clean Water Action Project,* 939 P.2d 469, 473–74 (Colo.Ct.App.1997) (collecting cases standing for the proposition that where the plaintiff chooses the initial forum, he or she will not be heard to complain that the chosen forum could not afford complete relief due to jurisdictional limitations). Thus, we hold that the magistrate court and the district court hearing the appeal are courts of "competent jurisdiction" for purposes of priority jurisdiction in this case.

{25} We also note that the cases Plaintiff appears to cite in support of her argument that the magistrate court and the district court sitting on appeal lack jurisdiction are not on point. Rather, these cases for the most part recite the familiar rule that a district court hearing a de novo appeal is bound by the jurisdictional limits of the inferior court that rendered the judgment from which appeal was taken. *See Rojas v. Kimble,* 89 Ariz. 276, 361 P.2d 403, 406 (1961) (holding that where inferior court properly dismissed action for lack of jurisdiction, district court on appeal also lacked jurisdiction, even though case could have been brought under district court's original jurisdiction); *Thornily v. Pierce,* 10 Colo. 250, 15 P. 335, 336 (1887) (holding that where the plaintiff on appeal from an inferior court recovered more than he could have in the inferior court, the court hearing the appeal should have either dismissed the case or required the plaintiff to remit the extra money); *Stacy v. Mullins,* 185 Va. 837, 40 S.E.2d 265, 266, 268 (1946) (dismissing case without prejudice and stating that "the appeal from the [inferior court] is a continuation of the original case, and on the appeal the warrant cannot be amended to make a case of which the [inferior court] would not have had jurisdiction"). The other cases cited by Plaintiff are similarly unhelpful. *See Lewis v. Baca,* 5 N.M. 289, 296–97, 21 P. 343, 344 (1889) (stating that a party on de novo appeal from the probate court has a right to a jury trial in appropriate circumstances); *Gillett v. Richards,* 46 Iowa 652 (1877).

{26} With regard to the last element of priority jurisdiction, that "the rights of the parties can be adjudged in the first action," Plaintiff merely reiterates her argument that

the district court on appeal lacks subject matter jurisdiction and cannot make her "whole." We have already rejected this argument and, in the absence of any additional arguments by Plaintiff on this point, we need not speculate as to what circumstances might defeat this element of priority jurisdiction. We hold that the final element of the doctrine is satisfied in this case. *See Robertson v. Carmel Builders Real Estate*, 2004–NMCA–056, ¶ 25, 135 N.M. 641, 92 P.3d 653 ("The burden is on the appellant to clarify how the trial court erred.").

{27} Having determined that all the elements of priority jurisdiction are satisfied in this case, we hold that the district court did not err in dismissing the complaint under that doctrine. Because the district court's order does not specify whether the dismissal is with or without prejudice, we clarify that the dismissal should be considered without prejudice to Plaintiff's right to recover in the de novo appeal that is currently pending before the district court. *See Valdez*, 91 N.M. at 787, 581 P.2d at 1282 (remanding for the district court to dismiss without prejudice to the right to recover in the first-filed action).

{28} Before we reach Plaintiff's remaining arguments, we wish to clarify two issues regarding priority jurisdiction that were not properly addressed by the parties in this case. First, it appears from the record that Defendants argued, and the district court believed, that the doctrine was jurisdictional. Contrary to Defendants' arguments, the doctrine is not jurisdictional in New Mexico. *See Burroughs*, 74 N.M. at 621, 397 P.2d at 12 (stating that the doctrine "would seem to apply" under the facts of the case but affirming the trial court's refusal to dismiss the complaint because there was "no question of jurisdiction" in the case and the doctrine had not been raised below).

{29} Second, because the doctrine is not jurisdictional, it may be an affirmative defense that could be waived if not timely raised, although we expressly do not decide the point. *Cf. People ex rel. Garamendi v. Am. Autoplan, Inc.*, 20 Cal.App.4th 760, 25 Cal.Rptr.2d 192, 197 (1993) (stating that the doctrine is "similar to an affirmative defense" and that "[p]rior to an appropriate pleading [invoking the doctrine], the trial court in the second action properly exercises its jurisdiction"). However, we cannot say that Defendants have waived their priority jurisdiction argument in this case, because Plaintiff never alerted the trial court to the fact that the doctrine is not jurisdictional and never asserted that Defendants' arguments should be considered waived because they were not timely raised. Nor does Plaintiff make these arguments on appeal. Under these circumstances, we hold that the trial court did not err in dismissing Plaintiff's complaint under the doctrine of priority jurisdiction. *See Hall v. Hall*, 114 N.M. 378, 384, 838 P.2d 995, 1001 (Ct.App.1992) (noting that absent extraordinary circumstances, we do not raise arguments for appellants).

### 2. *Sanchez* Does Not Permit Plaintiff to Re-file Her Case in District Court

{30} Plaintiff next argues that *Sanchez*, 54 N.M. 264, 221 P.2d 560, specifically permits her to file in district court, despite her earlier suit in magistrate court, because she determined after filing suit in magistrate court that her damages exceeded that court's jurisdictional limit. Because *Sanchez* is distinguishable, and because the portion of the case on which Plaintiff relies is dicta, we reject Plaintiff's argument.

{31} In *Sanchez*, the plaintiff brought a forcible entry and detainer action in the justice of the peace court. *Id.* at 265, 221 P.2d at 561; *see State v. Ramirez*, 97 N.M. 125, 126, 637 P.2d 556, 557 (1981) (stating that magistrate courts used to be called justice of the peace courts). The justice of the peace court ordered restitution of the property and awarded the plaintiff $200 in damages, which it found to be the rental value of the premises from the date the defendant took possession to the date of judgment. *Sanchez*, 54 N.M. at 265, 221 P.2d at 561. The defendant appealed to the district court, which tried the case de novo. *Id.* The district court ordered restitution of the property and awarded $200 in damages, but also awarded statutory double damages from the date of the justice of the peace court judgment to the date the

defendant actually vacated the premises. *Id.* at 265–66, 221 P.2d at 561.

{32} Our Supreme Court held that a district court hearing a de novo appeal of an inferior court judgment is bound by the jurisdictional limits of the inferior court. *Id.* at 266, 221 P.2d at 562. Thus, the Court held that despite the statute expressly allowing the type of double damages the district court awarded, the district court lacked jurisdiction to award any damages in excess of the inferior court's jurisdictional limit. *Id.* at 266–67, 221 P.2d at 562. Then, the Court stated the following dicta on which Plaintiff in this case relies:

> [T]he district court can render judgment for no greater amount than could the justice of the peace. If a plaintiff desires, he may sue in the justice court for possession alone and, where the damages at the beginning, or later through delay in trial, seem likely to exceed jurisdiction of the justice of the peace, sue separately for such damages in the district court.

*Id.* at 267, 221 P.2d at 562. Plaintiff argues that this dicta permits her to have filed her second suit in district court. She analogizes her case to *Sanchez*, stating that "through delay, subsequently occurring damages[,] and subsequent discovery, ... [P]laintiff became aware that her damages did exceed the jurisdictional limits of the magistrate court."

{33} We think Plaintiff reads too much into *Sanchez*. The dicta on which Plaintiff relies, referring as it does to an initial suit for "possession alone," specifically contemplates a suit for forcible entry and detainer, which is significantly different from Plaintiff's suit. There is a special statutory procedure for bringing suits for forcible entry and detainer in the magistrate court and appealing to the district court. *See* NMSA 1978, §§ 35–10–1 to –6 (1968, as amended through 1975). Moreover, the nature of such a suit is that damages will continue to accrue as long as the defendant is wrongfully in possession of the property. *See* § 35–10–5(A)(1) (stating that the measure of damages on appeal to the district court is "the actual value of the rent due until entry of judgment by the magistrate court and double the value of all rent accrued thereafter until entry of judg-

ment in the district court"). Thus, it makes sense that our Supreme Court would clarify the method by which a plaintiff can get compensation for damages that accrue "through delay in trial."

{34} We think the dicta on which Plaintiff relies is limited to suits for forcible entry and detainer. While Plaintiff does allege either newly occurring or newly discovered damages, her suit is not analogous to a suit for forcible entry and detainer, where damages necessarily continue to accrue as long as the defendant remains in wrongful possession. Thus, we disagree with Plaintiff that the dicta in *Sanchez* can be read to encompass any situation where additional damages become apparent after a suit has been commenced or litigated in an inferior court.

{35} In addition, we do not think that the dicta in *Sanchez* can be used to overcome the doctrine of priority jurisdiction. We note that *Larrazolo*, 70 N.M. 475, 375 P.2d 118, which appears to have been the first New Mexico case to state the doctrine of priority jurisdiction, was published approximately twelve years after *Sanchez*. Other courts of appeals have held that to the extent that two supreme court cases appear to produce inconsistent results, the later one would control. *See Hoffman v. Mem'l Hosp. of Iowa County*, 196 Wis.2d 505, 538 N.W.2d 627, 629 (App.1995) ("When decisions of the [Wisconsin Supreme Court] appear to be inconsistent, we follow that court's most recent case."). Thus, we reject Plaintiff's argument that *Sanchez* affirmatively permits her district court suit.

**3. The District Court's Dismissal of Plaintiff's Complaint Did Not Deprive Her of Due Process or Equal Protection**

{36} Plaintiff next argues that the district court violated her constitutional rights in dismissing her complaint. Plaintiff appears to rest this argument on her contention that the district court was the only court that could make her whole and that she thus has a constitutional right to "full and fair litigation" of all her "claims and damages" before the district court. The cases cited by Plaintiff do not support her argument. *See*

*Boddie v. Connecticut,* 401 U.S. 371, 374, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) ("[G]iven the basic position of the marriage relationship in this society's hierarchy of values and the concomitant state monopolization of the means for legally dissolving this relationship, due process does prohibit a State from denying, solely because of inability to pay, access to its courts to individuals who seek judicial dissolution of their marriages."); *Trujillo v. City of Albuquerque,* 1998–NMSC–031, ¶ 21, 125 N.M. 721, 965 P.2d 305 ("Access to the courts encompasses the ability of a party to have access to the judiciary to resolve legal claims. Nevertheless, such access is not boundless. A right of access to the courts does not guarantee the continued existence of a cause of action or remedy." (internal citations omitted)); *Jiron v. Mahlab,* 99 N.M. 425, 427–28, 659 P.2d 311, 313–14 (1983) (holding statute requiring plaintiffs to submit medical malpractice case to the Medical Review Commission prior to filing in district court unconstitutional as applied to particular plaintiff who filed in district court first in order to be able to serve process on the defendant who was about to leave the country).

{37} Plaintiff has not cited any case that would support her argument that a litigant has a constitutional right to have her claims heard for a second time in a different court, after fully litigating her case in the forum of her choice and obtaining a favorable judgment, simply because she now claims more damages. Accordingly, we reject Plaintiff's constitutional arguments.

**4. The Finality or Lack Thereof of the Magistrate Court Judgment Does Not Change the Result**

{38} Finally, Plaintiff disputes the district court's conclusion that the magistrate court judgment was final despite the pending de novo appeal. However, Plaintiff does not explain how this conclusion prejudiced her, what effect (if any) it has on the district court's dismissal of the present case on the ground of priority jurisdiction, or how the decision otherwise constitutes reversible error. Thus, we need not address Plaintiff's argument. *See Deaton v. Gutierrez,* 2004–

NMCA–043, ¶ 30, 135 N.M. 423, 89 P.3d 672 ("In the absence of prejudice, there is no reversible error." (internal quotation marks and citation omitted)).

{39} Moreover, we do not see how the finality or non-finality of the magistrate court judgment would make any difference to the outcome of this appeal. As we stated previously, a final judgment triggers res judicata analysis, while a pending case is subject to priority jurisdiction analysis. In either case, the result is the same: Plaintiff's complaint was properly dismissed.

**CONCLUSION**

{40} We affirm the district court's dismissal of Plaintiff's complaint. We reiterate that the dismissal should be considered without prejudice to Plaintiff's right to proceed in the other action currently pending in the district court.

{41} **IT IS SO ORDERED.**

WE CONCUR: CYNTHIA A. FRY and CELIA FOY CASTILLO, Judges.